IN THE DISTRICT COURT OF THE UNITED STATES
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| **ALONZO NEIL BROWN,** | ) | CA #: 2:12-cv-286 DCN |
| | ) | CR #: 2:09-295 |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| Respondent. | ) | |

## **BACKGROUND**

On December 29, 2008, petitioner ("Brown") was arrested by officers of the North Charleston Police Department ("NCPD"). Brown had been the driver of a getaway care that was being chased by NCPD officers. Shortly before noon, two men, later identified as Davin Stewart and Robert Nelson, robbed a Wachovia Bank. They fled the bank in a Crown Victoria, but shortly thereafter ditched the Crown Victoria and jumped into a Ford Expedition being driven by Brown. Later, several miles away in North Charleston, the Expedition was spotted by NCPD officers, resulting in a lengthy high speed chase.

During the chase, Brown slowed down long enough for Stewart and Nelson to bail out of the Expedition and flee on foot with the stolen money, leaving the guns used in the bank robbery in Brown's vehicle. Stewart and Nelson were quickly apprehended by the NCPD, but Brown continued to flee, careening through a residential area until the Expedition spun out and ended up in a ditch.

Brown was soon surrounded by police. He threw one gun out of the window but kept the other one. Brown waved the gun around and pointed it at himself in an apparent threat of suicide.

After a nearly one-hour standoff, Brown surrendered to the police.

At the time of his arrest, Brown had four previous felony convictions: (1) conspiracy to commit murder, (2) voluntary manslaughter, (3) distribution of crack cocaine, and (4) armed robbery/assault and battery with intent to kill.

On March 11, 2009, a five-count Indictment was filed against Brown, Stewart and Nelson charging them with armed bank robbery and various firearm offenses.

On November 18, 2009, Brown was convicted of being a felon in possession of a firearm, but was acquitted of the charges of bank robbery and use of a firearm during a crime of violence.

After his conviction, a Presentence Investigation Report ("PSR") was prepared by the U.S. Probation Office. Because of Brown's four felony convictions, he was deemed an "armed career criminal" pursuant to U.S.S.G.§ 4B1.4 and U.S.C. 924(e). At sentencing, Brown's advisory guideline range was determined to be 180 to 210 months.

On June 7, 2010, Brown was sentenced to a 196-month term of incarceration. He appealed to the Fourth Circuit Court of Appeals and on April 14, 2011, the Fourth Circuit affirmed this court. *United States v. Alonzo Neil Brown*, Opinion No. 10-4671 (4th Cir. 2011).

Brown filed the instant petition for post conviction relief pursuant to 28 U.S.C. § 2255 on January 30, 2012. On March 14, 2012 the Government filed a Motion to Dismiss or for Summary Judgment. A <u>Roseboro</u> Order was filed on March 15. Brown responded to the Government's Motion on June 15, 2012; therefore the Government's Motion is ripe for resolution.

## PETITIONER'S CLAIMS

### A. IMPROPER APPLICATION OF ARMED CAREER CRIMINAL STATUS

Brown raises two arguments about the improper application of the sentencing guidelines.

First, he argues that he was incorrectly determined to be an armed career criminal. To support this claim, Brown asserts that his convictions for distribution of crack (PSR ¶23) and for armed robbery/assault and battery with intent to kill ("ABWIK") (PSR ¶24) should not be counted as two separate convictions because he was sentenced on the same day for these offenses. Brown also asserts that his convictions for voluntary manslaughter (PSR ¶21) and conspiracy to commit murder (PSR ¶20) should not count against him because they occurred when he was seventeen years old.

Second, Brown argues there was an error in the calculation of his criminal history points. Brown asserts that points were improperly added to his sentencing offense level for his conspiracy to commit murder and distribution of crack convictions.

As the Government notes in its Motion, the Fourth Circuit has held that the improper application of sentencing guidelines should be raised in a direct appeal. *United States v. Mikalajunas*, 186 F.3d 490, 493 (4th Cir. 1999). If a petitioner fails to raise the issue on direct appeal he may only do so in a collateral motion if he can "demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack." *Id*.

The Government argues that there has been no miscarriage of justice, and the court agrees. As noted above, Brown appealed his conviction and sentence and the Fourth Circuit affirmed this court in an unpublished per curium decision.[1] However, in the interest of completeness, the court will consider Brown's claims.

## **BROWN IS AN ARMED CAREER CRIMINAL**

The armed career criminal statutory penalty for a defendant convicted of being a felon

---

[1] In its decision, the Fourth Circuit noted that there was "no error with respect to the calculation of the advisory Guideline sentence." Brown's complaints with regard to the application of the Guidelines, assuming they were raised on appeal, have been rejected by the Fourth Circuit.

in possession of a firearm is found at 18 U.S.C. 924(e). The penalty enhancement of a mandatory minimum sentence of 15 years applies to a defendant who (a) has been convicted of being a felon in possession of a firearm and/or ammunition, and (b) has at least three prior convictions for a violent felony, a serious drug offense, or a combination of both, (c) that were committed on separate occasions within fifteen years of the present offense. The sentencing guidelines also determine when a defendant is deemed to be an armed career criminal in U.S.S.G. § 4B1.4. Brown's convictions clearly qualify him as an armed career criminal.

## VOLUNTARY MANSLAUGHTER CONVICTION

Convictions for offenses prior to age eighteen are included when they "resulted in adult sentences of imprisonment exceeding one year and one month." U.S.S.G. § 4A1.2(d) Application Note 7. Brown was charged with shooting and killing Harold Gantlin on November 27, 1990. On October 27, 1999 he pled to voluntary manslaughter and was sentenced to 5 years in jail. (PSR ¶21)

The term "violent felony" means any crime punishable by imprisonment for a term exceeding one year . . . that has an element the use, attempted use, or threatened use of physical force against the person of another. See 18 U.S.C. 924(e)(2)(B). "Crimes of violence include ...manslaughter..." See U.S.S.G. § 4B1.2 Application Note 1. Brown's voluntary manslaughter conviction involved the shooting death of another individual. He pled guilty, was sentenced to imprisonment for five years, and released on parole on July 30, 2004. Thus, Brown's conviction for voluntary manslaughter qualifies because it was a violent crime, he was released from imprisonment within fifteen years of the instant offense (December 29, 2008), and, although he was seventeen at the time he committed the offense, he was sentenced as an adult to a term of imprisonment of five years.

## DISTRIBUTION OF CRACK COCAINE CONVICTION

The term "serious drug offense" means "...an offense under state law involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance ... for which a maximum term of imprisonment of ten years or more is prescribed by law." See 18 U.S.C. 924(e)(2)(A).

Brown's distribution of crack offense carried a possible maximum sentence of 15 years. The date of the offense was August 28, 1994. Brown was 21 at the time of this offense. He pled guilty on June 21, 1996, was sentenced to imprisonment for ten years, and released on parole on July 30, 2004. (PSR ¶23) Thus, Brown's conviction for distribution of crack qualifies because it is a serious drug offense, he was released from imprisonment within fifteen years of the instant offense, and he was older than eighteen years old at the time of the offense.

## ARMED ROBBERY/ASSAULT AND BATTERY WITH INTENT TO KILL CONVICTION

Although he was sentenced for these crimes at the same time he was sentenced for his crack distribution charge, Brown's convictions for armed robbery/ABWIK are separate from his conviction for distribution of crack because there was an intervening arrest after Brown was released on bond for his crack distribution charge. He was arrested for distribution of crack cocaine on August 28, 1994 and released on bond. He was arrested for the armed robbery/ABWIK charges on February 14, 1996. He pled guilty to both of those charges on July 21, 1996, was sentenced to ten years, and released on parole on July 30, 2004. (PSR ¶24) Thus, Brown's convictions for armed robbery/ABWIK apply because both are violent felonies, he was released from imprisonment within fifteen years of the instant offense, and he was older than eighteen years old at the time of the offenses.

Therefore, Brown has at least three violent felonies or serious drug offenses that are applicable to his classification as a armed career criminal.[2]

## ERROR IN CALCULATION OF CRIMINAL HISTORY POINTS

Brown's argument that there was an error in the calculation of criminal history points also fails. There was no calculation error. Brown doesn't understand the difference between (a) adding criminal history points pursuant to the length of sentence imposed and (b) classifying prior convictions in order to qualify him as an armed career criminal (regardless of the sentence imposed for those convictions). These are two separate and distinct sentencing concepts.

As stated above, Brown had at least three prior convictions that qualify him as an armed career criminal. Separate from that, the Guidelines mandate that three points are to be given for each prior sentence that was imposed and that exceeded one year and one month resulting in a criminal history category of V. U.S.S.G. § 4A1.1(a). Because he was an armed career criminal, his criminal history category was raised to VI. U.S.S.G. § 4B1.4(c). There was no error in the calculation of his criminal history.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL AND SENTENCING

The Supreme Court has a well-established standard for what constitutes ineffective assistance of counsel. To be successful on an ineffective assistance claim, a defendant must prove the following: 1) trial counsel's performance was deficient, and 2) the defendant was

---

[2] Brown does not seem to contest that his conviction for shooting and killing James Moloney on July 8, 1990 (PSR ¶20), is another violent felony conviction that can be considered in determining whether he's an armed career criminal. This conviction too may be able to be considered in determining if Brown is an armed career criminal. Brown was 17 at the time, pled guilty on July 8, 1991 and was sentenced to five years in jail. Although he was paroled on March 11, 1992, thus more than fifteen years before the instant offense, his parole was revoked on August 28, 1992 and he maxed out his sentence and was released on December 30, 1993, one day less than the fifteen year cutoff. However, since Brown is otherwise correctly classified, the court need not conduct this analysis.

prejudiced by counsel's deficiency. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Trial counsel's performance can only be considered deficient if it "falls below an objective standard of reasonableness." *Id*. at 688. Courts give great deference to the trial attorney's judgment and there is a strong presumption that counsel's conduct is within a wide range of reasonable professional assistance. Id. at 688-89. The burden is on the defendant to "identify the acts or omission of counsel," and then the court will "determine whether, in the light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id*. at 690.

A defendant must also show that he was prejudiced by trial counsel's alleged deficient performance. To prove prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. The court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id*. at 697. Additionally, even if the court finds that counsel's performance was outside the wide range of professionally reasonable assistance, the court should only overturn the conviction if there is "a probability sufficient to undermine [his conviction]."

An example of the courts' deference to trial counsel is the "'strong presumption' that a trial counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *United States v Roane*, 378 F.3d 382, 404 (4th Cir. 2004). Matters that are considered trial strategy and tactics include "what evidence should be introduced, what stipulations should be made, what objections should be raised, and what pre-trial motions should be filed." *Sexton v. French*, 163 F.3d 874, 884 (4th Cir. 1998).

## TRIAL COUNSEL TOLD THE JURY TO FIND BROWN GUILTY OF POSSESSION OF THE FIREARM

Brown complains that his trial attorney was ineffective for telling the jury to find Brown guilty of being a felon in possession of a firearm during his closing argument. This strategy probably prevented Brown from being found guilty of the much more serious crimes of bank robbery and use of a firearm during a crime of violence. If he had been convicted of armed bank robbery and the 924(c) counts, Brown would have been considered both a career offender and an armed career criminal. As such, his guidelines would have been 360 months to Life. By being found guilty only on Count 5 he avoided the career offender status and the 924(c) mandatory consecutive sentence.

At trial, Brown took the stand and testified as to what happened on December 29, 2008. In his testimony, Brown admitted to having possessed two firearms during his lengthy standoff with the police. His possession of these weapons was also clearly visible for the jury to see when the police video was played during the trial. Brown also admitted that he had the felony convictions noted above. Brown vigorously denied that he was a part of the bank robbery. Given those admissions during his trial testimony, for his trial counsel to suggest to the jury that Brown is guilty of what he admitted (possessing a firearm) but not guilty of what he denied (bank robbery and the use of the firearm during the robbery) was a sound strategy. It must have been – the jury bought it.

As Brown's trial counsel asserts in his affidavit, to admit to the crime which was already obvious gave Brown credibility. And credibility was needed to support Brown's denial that he was a part of the bank robbery. This strategy clearly worked – the jury believed Brown and acquitted him of the much more serious charges.

## BROWN'S MENTAL CONDITION BEFORE AND DURING TRIAL

Brown now asserts that prior to and during his trial, he was in such a challenged mental state that he was not fit to stand trial and that his trial counsel should have recognized this. He further asserts that his mental condition should have been brought to the court's attention as a mitigating factor in determining his sentence.

In his petition, Brown claims that he "was suffering from mental problems which prevented him from being able to consult counsel with a reasonable degree of rational understanding and lacked a rational as well as factual understanding of the charges and proceedings against him..." Brown further states that his trial counsel "...should have investigated [his] mental history, [and] alerted the court and government that Mr. Brown may be incompetent to stand trial and a competency hearing would be necessary." Brown asserts that "...throughout the trial and sentencing hearing, each and every time Mr. Brown made a statement to the court corresponded to anything the court addressed to him, he responded as if he were drugged or not quite aware of things."

As stated in Mr. Murphy's affidavit, nothing gave him any indication that Brown was suffering from a mental condition. According to his trial counsel, Brown never complained of any mental illness, nor did any such illness manifest itself before or during trial.

Brown testified at length about his actions on the day of the bank robbery. Brown could remember his children's ages (Tr. 171-2) and his jail experiences (Tr. 172-3). He also walked the jury through his actions on December 29, 2008 (Tr. 176-190). He was cross-examined by the Assistant United States Attorney (Tr. 191-220) and his co-defendant's attorney (Tr. 220-228). In response to the Assistant United States Attorney's question, he knew that it was the jury's duty to judge his credibility (Tr. 217-218). His testimony was clear and consistent. There was

nothing in his testimony or demeanor that gave the court or the jury any indication that he was suffering from any mental condition. The jury did what he asked them to do: they believed him, an accused armed bank robber with four prior serious and violent felony convictions and saved him from a potential life sentence by acquitting him.

Brown's mere assertion that he was suffering from a severe mental condition - despite not being apparent to his trial counsel, counsel for the Government, the court, or the jury - is insufficient to support his claim. His bold assertion that he was "seemingly not in touch with his surroundings" is not supported by a shred of evidence.

As there was no indication or evidence of the mental state that Brown now claims to have had, his trial counsel was not ineffective for failing to bring Brown's "mental condition" to the court's attention before or during the trial, or as mitigation at Brown's sentencing.

**FAILURE TO OBJECT TO ROBERT NELSON'S TESTIMONY AT SENTENCING**

Brown asserts that his trial counsel should have objected to the Government's calling co-defendant Robert Nelson as a witness during Brown's sentencing hearing. In his petition, Brown fails to cite to any legal authority that would have supported such an objection by his trial counsel.

As he stated in his affidavit, Brown's trial counsel was unaware of any legal basis to object to Nelson's testimony. Nelson was a co-defendant who participated in the robbery. He fled the scene in Brown's vehicle. Nelson's testimony at Brown's sentencing was, essentially, while he didn't know Brown prior to the bank robbery, he believed that Brown was a knowing participant in the get-away plan.

It is uncontested that, shortly after his arrest, Nelson gave several conflicting versions of the planning and commission of the bank robbery. As a result, the Government did not call him

as a witness at the trial of Brown and Davin Stewart. The Government relied on the video evidence from the bank and testimony of the police officers. Although the Government was successful in persuading the jury to convict Stewart for the bank robbery, it was apparently insufficient to convict Brown.

Nonetheless, the Government was within its rights in calling Nelson as a witness at Brown's sentencing hearing. There was no legal basis for any objection, thus Brown's trial counsel was not ineffective in that regard.

### **FAILURE TO OBJECT TO GOVERNMENT'S MENTION OF BROWN'S INVOLVEMENT IN THE BANK ROBBERY DURING BROWN'S SENTENCING**

Brown asserts that his trial counsel was ineffective for failing to object at Brown's sentencing hearing when the Government argued that the court should consider Brown's knowing participation as the get-away driver despite his being acquitted of any role in the bank robbery.

As stated above, Brown again claims that his trial counsel should have objected, but fails to provide any legal basis for such an objection. Despite the fact that Brown was acquitted of being a participant in the bank robbery, the sentencing guidelines allow the court to consider acquitted conduct at sentencing.

U.S.S.G § 1B1.3 Background Commentary states in part, "Conduct that is not formally charged or is not an element of the offense of conviction may enter into the determination of the applicable guideline sentencing range." Further, "[R]elying on the entire range of conduct, regardless of the number of counts that are alleged or on which a conviction is obtained, appears to be the most reasonable approach to writing workable guidelines for these offenses. In *U.S. v. Watts*, 519 U.S. 117 S. Ct. 633 (1997) the United States Supreme Court examined the very issue

of a District Court's consideration of acquitted conduct. The Court began its analysis with 18 U.S.C. § 3661 which states, "no limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." The Supreme Court found in *Watts* that "the Court of Appeals failed to appreciate the significance of the different standards of proof that govern at trial and sentencing. We have explained that 'acquittal on criminal charges does not prove that the defendant is innocent; it merely proves the existence of a reasonable doubt as to his guilt.'" The Supreme Court further clarified, "An acquittal is not a finding of fact. An acquittal can only be an acknowledgment that the government failed to prove an essential element of the offense beyond reasonable doubt. Without specific jury findings, no one can logically and realistically draw any factual finding inferences", quoting from *U.S. v. Putra*, 78 F.3d, 1394.

Pursuant to *Watts*, the Government was free to argue and the court was free to consider all information against Brown, regardless of whether or not it related to acquitted conduct; therefore, since there was no legal basis for the objection that Brown alleges that his trial counsel should have made, his counsel was not ineffective.

## **FAILURE TO EXPLAIN THE SENTENCING GUIDELINES**

Brown asserts that he "was not aware of the Sentencing Guideline criteria," but fails to state with specificity how this claim impacted the outcome of the proceedings against him.

Brown was advised at his arraignment and by the penalty sheet attached to his indictment of the statutory penalties that he faced if convicted of any or all of the charges in the Indictment. Brown's trial counsel avers in his affidavit that although there was discussion with Brown regarding possible punishment and guideline ranges, no plea bargaining took place. His trial

counsel states that they discussed the guideline range and possible sentence for convictions of the armed robbery and the use of a firearm during a violent crime. Further, his trial counsel researched Brown's criminal history and determined that Brown would likely qualify as an armed career criminal if convicted of being a felon in possession of a firearm.

Because the nature of the case and Brown's significant criminal history, the Government did not offer to let Brown plead guilty to anything less than all indicted charges. Brown was unwilling to enter a guilty plea to any of the counts in the Indictment. Therefore, the case was always going to be a trial. Brown knew the statutory penalties that he faced, and the guideline range could never exceed that maximum statutory penalty.

### C. PROSECUTORIAL MISCONDUCT

Brown argues that the Government violated the doctrine laid out in *Brady v. Maryland*, 373 U.S. 843 (1963), by failing to disclose exculpatory or impeachment evidence. To establish a *Brady* violation, a defendant has the "burden of establishing that the prosecutor suppressed evidence that was unknown to the defendant." *United States v. Tarwater*, 308 F.3d 494, 515 (6th Cir. 2002) (citing *United States v. Agurs*, 427 U.S. 97, 103 (1976)). The defendant must show that the Government withheld "evidence that is material to his guilt or punishment..." *Cone v. Bell*, 556 U.S. 449, 129 S. Ct. 1769, 1782-83 (2009) (citing *Brady*, 373 U.S. at 87). Evidence is not material unless "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id*. at 1783.

In the instant case, Brown claims that the Government withheld information that a witness, Robert Nelson, was perjuring himself on the stand at sentencing. Brown supports his argument by claiming that because the Government did not call Nelson to testify at trial, the Government knew Nelson was lying. This argument has no basis in fact. Mere assertions by the

defendant are not enough to carry his burden of proof on this matter. Further, as stated earlier, the Government and Brown were aware that Nelson had given conflicting statements after his arrest. Brown was provided a copy of Nelson's conflicting statements in the discovery materials. As a result, Brown's counsel cross-examined Nelson as to those inconsistencies during Brown's sentencing hearing. Therefore, despite Brown's assertion, the Government is not guilty of any prosecutorial misconduct.

### D. DOUBLE JEOPARDY

Brown has withdrawn his Double Jeopardy Claim (Brown response at page 20).

Based on the foregoing arguments, the Government's Motion to Dismiss or, in the alternative, for Summary Judgment is **GRANTED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is denied because petitioner has failed to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(b)(2).

**AND IT IS SO ORDERED.**

_____
David C. Norton
United States District Judge

October 16, 2012
Charleston, South Carolina